No. 3363

Second Circuit

---

## HOPKINS, STARR, HOPKINS & HAMEL v. URANIA LUMBER COMPANY, LTD.

---

(January 31, 1930. Opinion and Decree.)
(March 24, 1930. Rehearing Refused.)

---

G. P. Whittington, of Alexandria, attorney for plaintiff-appellee, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant-appellant, appellee.

DREW, J. Plaintiffs in this suit are a firm of attorneys in Washington, D. C. They institute this suit against the defendant company for the sum of $1,750 for attorney's fees for services which they allege they rendered the defendant, during the year 1926 and the early part of 1927, in connection with a dispute that existed between the Urania Lumber Company, Limited, and the United States government over an erroneous charge made by the government against said company for excess income taxes amounting to about $16,000 for the years 1919 to 1921, inclusive.

Defendant denies that it ever employed plaintiffs to represent it in said controversy, averring that it employed the accounting firm of Flournoy & Beasley, of Alexandria, La., to handle the matter for it before the Internal Revenue Department of the United States, and that, if said plaintiffs performed any service in connection with the matter, said accounting firm was responsible for the services, and not this defendant. It further alleged that, if the court should find that the defendant was in any way responsible for the services of plaintiffs, that the said services were not worth in excess of $100.

The case was tried on its merits, and the lower court rendered judgment in favor of plaintiffs in the sum of $500. From this judgment, both plaintiffs and defendant perfected appeals.

In the early fall of 1925, the Internal Revenue Department notified the Urania Lumber Company, Limited, that its claim for stave depletion for the years 1919 to 1921, inclusive, amounting to something in excess of $54,000, had been rejected by the department, and an assessment in excess of $27,000 extra income tax had been levied against the defendant company.

Defendant employed the accounting firm of Flournoy & Beasley, of Alexandria, La., to represent it before the Internal Revenue Department in adjusting said claim. It is necessary for any one who appears for another before this department, or any of its units, to have a written power of attorney, and when the power of attorney was presented by the accountant firm to defendant for signature, it not only contained the name of Flournoy & Beasley, but also the name of the plaintiffs herein. Defendant made arrangements with the accounting firm for the employment of said accounting firm and to pay them certain fees. When the matter was finally wound up and settled, the defendant had been saved between $16,000 and $17,000. The accounting firm of Flournoy & Beasley were paid the fees agreed upon, amounting to about $2,400. Later the plaintiffs presented a bill to defendant for $1,750 for services claimed to have been rendered in the matter, and, when same was not paid, filed this suit.

Plaintiffs base their claim of employment entirely upon the power of attorney, which reads as follows:

"Know all men by these presents, that we, Henry E. Hardtner, of Alexandria, Louisiana, president and secretary-treasurer, respectively, of the Urania Lumber Company and Natchez, Urania & Ruston Railway Company, of Urania, Louisiana, corporations organized under the laws of the state of Louisiana, do hereby make, constitute, and appoint W. C. Flournoy and J. W. Beasley, of Alexandria, Louisiana, both of the firm of Flournoy & Beasley, public accountants, Alexandria, Louisiana, and Richard S. Doyle, attorney of the legal firm of Hopkins, Starr, Hopkins & Hamel, of Washington, D. C., our true and lawful attorneys, for us, and in our name, place, and stead, to appear before the Treasury Department of the United States, or any Bureau thereof, or any official or officials of said Department, in all matters pertaining to the determination, assessment, collection or payments of any taxes which may be due by the said Urania Lumber Company and Natchez, Urania & Ruston Railway Company, to the United States, or pertaining to claims for abatements, credit or refunds, based on the assessment or payment of any amounts as such taxes—to inspect any and all returns made by the corporations under the Revenue Acts of 1917, 1918, 1921 and 1924, respectively—to receive and receipt for in behalf of the corporations all checks and warrants made by the United States on account of any refunds made or allowed—and generally to do, execute, and perform every act and thing whatever necessary or proper to be done with respect to the premises.

"In witness whereof, we have hereunto set our hands and corporate seal, on this ——day of ——, 1925."

The original is not in evidence, only a copy, but there is no denial that the above power of attorney was signed by the president and secretary-treasurer.

The testimony shows that the firm of Flournoy & Beasley used the plaintiff firm in all cases where they needed attorneys in Washington, and that their custom was, in taking the power of attorney from their clients, to always insert the name of the plaintiffs as well as their own, and afterwards, if they found they needed Washington attorneys, to use the said plaintiffs without any further power of attorney; that they had inserted plaintiffs' name in several other powers of attorney when they made no use of them. One specific case referred to in the evidence is the Ball Bros. Lumber Company. The uncontradicted testimony is that, when the power of attorney was presented to defendant for its signature by its officers, Mr. Flournoy stated that they had inserted their Washington attorney's name therein; on October 2, 1926, a letter written by Flournoy & Beasley to defendant and signed by W. C. Flournoy, reads as follows:

"We are inclosing herewith copy of a letter from the Treasury Department forwarded us through our Washington, D. C., attorneys."

Mr. Flournoy testified that he brought the plaintiffs into the case in January or February, 1926, and the power of attorney is shown to have been executed and filed in September, 1925, and that the entire matter they were employed to handle was taken up and threshed out with the New Orleans department prior to the bringing into the case of the plaintiffs; the evidence is conclusive that there was never at any time any meeting of plaintiffs and defendant and there was never any correspondence between them, except the demand for payment of the bill of $1,750 by plaintiffs.

The testimony of Mr. Flournoy is very convincing. Before this suit was instituted, he and Mr. Beasley dissolved partnership, and the business of defendant was retained by Mr. Beasley. Mr. Flournoy says that he has no interest in the suit, other than to stand behind the Washington attorneys. He testified on direct examination that "we (Flournoy & Beasley) were employed to take the case and to defend them against the government." He also testified:

"Well, they gave us the customary power of attorney to do all things needful and necessary before the United States Internal Revenue Bureau, both in New Orleans and in Washington, D. C. I devoted considerable time to it, both in the office of the Urania Lumber Company as well as in our office and also in Washington, D. C. The major item was a depletion charge of $50,000, which the government disallowed, and which was the basis of our investigation through our Washington attorneys. We were enabled to get the timber valuation engineers in Washington, D. C., sustain the reduction of the depletion

originally claimed by the Company and later disallowed by the field agents. That was really the work we were employed for, and that was what we employed the Washington attorneys for."

He further testified:

"We couldn't operate without an attorney in Washington."

When Mr. Flournoy returned from Washington in the spring of 1926, and notified Mr. Beasley, his partner, that he had brought the plaintiffs into the case, Mr. Beasley strenuously objected, on the ground that they did not need the services of an attorney in this matter, and for the further reason that the fee made with defendants by them would not justify paying an attorney, and they could not expect any more than was agreed to, to which Mr. Flournoy replied that plaintiffs would be satisfied with a nominal fee, which was shown to be $100.00.

Mr. Hardtner, secretary-treasurer and general manager of the defendant company, testified that he employed Flournoy & Beasley to handle this matter, and that he did not employ plaintiffs, and had no knowledge of their being in the case until he received their bill several months after the matter had been settled and he had paid the accountants, Flournoy & Beasley, in full. His testimony is as follows:

"I employed the firm of Flournoy & Beasley to represent us and I signed whatever they recommended and if they brought a paper for me to sign, I signed it. If they brought me a power of attorney to sign, I signed it."

Mr. Doyle, one of plaintiffs, testified that Mr. Flournoy, of the firm of W. C. Flournoy & Co., took up the matter with him (Doyle) of representing the Urania Lumber Company, Limited. He does not claim that

he had any dealing in regard to employment with the defendant, or even had any correspondence with defendant in regard to the case; neither does he claim that any fee was ever fixed by any one.

The evidence is convincing that the defendant never had any intention of employing any one other than Flournoy & Beasley and that Flournoy & Beasley never had any intention other than to pay plaintiffs a nominal fee out of their fee; that the only contract of employment plaintiffs had was with Flournoy & Beasley, and defendant could not be held liable under such contract.

· Where counsel makes a written contract to transact certain business for a given per cent of the sum realized, he cannot charge his client with the fee of other attorneys whom he employs to perform the work. Hughes vs. Zeigler, 69 Ill. 38; In re Hynes, 105 N. Y. 560, 12 N. E. 60.

There is much evidence on the question of the services performed by plaintiffs and the amount they are entitled to for said services; however, it is unnecessary to go into this phase of the case under our finding.

There is evidence suggesting collusion between the plaintiffs and their witness, Flournoy, who was formerly a member of the firm of Flournoy & Beasley, neither of whom attempted to clear the suggestion up, and, to the contrary, refused to file in the record the correspondence between them on the subject of the present suit. But, under our finding in the case, it can have no bearing.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and there be judgment rejecting plaintiffs' demands, at their costs in both courts.